IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| JEFFREY DAQUAN REDD, ) | Civil Action No. 9:23 CV-1605-DCN-MGB |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | (JURY TRIAL REQUESTED) |
| Investigator Robert Byrd, in his individual ) | |
| capacity as an investigator with the Beaufort ) | |
| County Sheriff's Office; Investigator Todd ) | |
| Duncan, in his individual capacity as an ) | |
| Investigator with the Beaufort County ) | |
| Sheriff's Office; P.J. Tanner, in his ) | |
| Individual capacity as Beaufort County ) | |
| Sheriff; Duffie Stone, in his individual ) | |
| Capacity as Solicitor for the Fourteenth ) | |
| Judicial Circuit; Mary Jones, in her ) | |
| Individual capacity as Assistant Solicitor for ) | |
| The Fourteenth Judicial Circuit; ) | |
| ) | |
| DEFENDANTS. ) | |

Comes now the Plaintiff, Jeffrey Daquan Redd, complaining of the Defendants and alleges the following.

**PARTIES AND JURISDICTION**

1. Plaintiff Jeffrey Daquan Redd ("Redd"), at all times relevant to this complaint was a resident of Beaufort County, South Carolina, with the majority of the acts and omissions described in this complaint occurring in Beaufort County, South Carolina.

2. Defendant Robert Byrd ("Byrd") is sued in his individual capacity for acts and omissions he committed under color of law as an investigator with the Beaufort County Sheriff's Office in violation of 42 U.S.C. 1983.

1

3. Defendant Todd Duncan ("Duncan") is sued in his individual capacity for acts and omissions he committed under color of law as an investigator with the Beaufort County Sheriff's Office in violation of 42 U.S.C. 1983.

4. Defendant P.J. Tanner ("Tanner") is sued in his individual capacity for acts and omissions he committed under color of law as Beaufort County Sheriff in violation of 42 U.S.C. 1983.

5. Defendant Duffie Stone ("Stone") is sued in his individual capacity for acts and omissions he committed under color of law as Solicitor of the Fourteenth Judicial Circuit in violation of 42 U.S.C. 1983.

6. Defendant Mary Jones ("Jones") is sued in her individual capacity for acts and omissions she committed under color of law as Assistant Solicitor of the Fourteenth Judicial Circuit in violation of 42 U.S.C. 1983.

## FACTUAL ALLEGATIONS

7. On or about June 3, 2019, the Beaufort County Sheriff's Office (hereinafter BCSO) began investigating a shooting that occurred at the Circle K gas station located at 114 Sea Island Parkway, Lady's Island, South Carolina.

8. Surveillance video from the Circle K shows the shooting in its entirety.

9. In the video you can clearly see a black Toyota Camry driving past the gas pumps when the shooting incident occurs.

10. Two individuals standing near the gas pumps, later identified as Montarious Brown ("Brown") and Dequarious Major ("Major"), fire their handguns at the black Toyota Camry as it passes by.

11. There is another unidentified shooter who can be seen firing a weapon while standing on the passenger side right rear quarter-panel of a white SUV parked near the Circle K sign.

12. During the shooting incident Clarence Mitchell ("Mitchell") is shot and killed and Kashaun Holmes is shot and injured inside the black Toyota Camry.

13. It is also discovered that Tyrese Chisolm ("Chisolm") and Tyre Atkins ("Atkins") were also in the black Toyota Camry that night and also fire their handguns at several individuals standing outside near the gas pumps.

14. During a recorded interview, Chisolm admits that he was holding his gun up in a shooting position as the black Toyota Camry drove past the gas pumps and fired at the individuals standing by the gas pumps.

15. During a recorded interview, Atkins, who was a minor at the time, also admits to firing his gun at the individuals standing by the gas pumps.

16. Plaintiff is not in any of the Circle K surveillance videos from the night of the incident.

17. None of the evidence collected from the Circle K places Plaintiff at the gas station on the night of the shooting.

18. Plaintiff is informed and believes that immediately after the shooting BCSO spoke to Holmes in the hospital and Holmes stated that he did not know who was shooting that night and did not see what type of gun was being fired at him.

19. Plaintiff is informed and believes that after Holmes gave his first statement, BCSO went back to the hospital a few hours later and coerced Holmes into falsely identifying Plaintiff as the person who shot him in order to get a search warrant for the white Chevy Tahoe that belonged to Plaintiff's mother, Shawn Redd.

20. Plaintiff is informed and believes that BCSO knew the statement Holmes gave identifying Redd as one of the shooters was not true based on the surveillance videos and the area where the shell casings were collected.

21. On June 4, 2019, BCSO seized and searched the 2006 white Chevy Tahoe, belonging to Plaintiff's mother, which they located at 29 Saxonville Road.

22. None of the evidence collected from the Tahoe places Plaintiff at the gas station on the night of the shooting.

23. Plaintiff is informed and believes that during their investigative interviews with BCSO and Solicitor Stone's office, Chisolm and Atkins both denied seeing Plaintiff at the Circle K gas station during the shooting.

24. Plaintiff is informed and believes Major also gave a statement to BCSO that Plaintiff was not at the Circle K gas station during the shooting.

25. On June 19, 2019, BCSO obtained arrest warrants for Brown and Major charging each of them with three (3) counts of attempted murder.

26. On September 10, 2019, Defendant Duncan questioned Plaintiff about the shooting and informed Plaintiff that BCSO could not prove he was at the gas station the night of the shooting.

27. On March 11, 2020, Defendant Byrd submitted a false and misleading warrant affidavit to a magistrate judge in order to obtain a search warrant for Facebook records for an account ID number of 142846055755253, which Byrd claimed was verified on 3/10/20 at 2:56 pm EST as allegedly belonging to Plaintiff. The false and misleading statements made by Byrd were:

    a. The third shooter is seen on video, exiting a white Tahoe, raising an assault rifle and firing multiple shots at the victim's vehicle.

    b. Victim statements indicate, one victim observed who he knows as Jeffrey Daquann Redd having in his possession the rifle and firing it multiple times.

    c. On 6/4/19, Jeffrey Daquann Redd's White Chevrolet Tahoe, bearing SC registration of PML528 was located at 19 Saxonville Road, Saint Helena Island, SC 29920. This address is Jeffrey Redd's home address. The vehicle was discovered to contain multiple fresh bullet holes.

    d. During subsequent interviews, a witness/victim stated to investigators that they had previously seen social media post from Jeffrey Redd in which he was in possession of a AR-15 style rifle.

28. On March 31, 2020, BCSO obtained Facebook records for a Facebook account with the ID number of 100000895771116, which they also claim belonged to Plaintiff.

29. Nothing contained in the Facebook records identify Plaintiff as one of the gas station shooters on June 3, 2019.

30. Plaintiff is informed and believes that on April 6, 2020, Defendant Duncan met with members of Defendant Stone's office, including Defendant Jones, where they reviewed and discussed the witness statements and evidence that had been collected since the night of the shooting in an investigative and administrative capacity,.

31. Plaintiff is informed and believes Defendant Jones was complicit in the decision for BCSO to falsely arrest Plaintiff, advising Defendant Duncan that there was probable cause to obtain arrest warrants on Plaintiff by using the knowingly false statement of Holmes as evidence supporting probable cause for the warrants.

32. After meeting with Defendant Jones, Defendant Duncan presented knowingly misleading affidavits to a magistrate judge in order to establish probable cause and obtain arrest warrants against Plaintiff for murder, three counts of attempted murder, and possession of a weapon during the commission of a violent offense

33. Plaintiff is informed and believes that after obtaining the arrest warrants for him, Defendants did not attempt to notify Plaintiff of the outstanding warrants or attempt to arrange for Plaintiff to turn himself in.

34. Plaintiff is informed and believes that after the warrants were obtained, BCSO did not attempt to locate Plaintiff his home or his mother's home to arrest Plaintiff.

35. Plaintiff is informed and believes that on April 16, 2020, while Plaintiff was sitting in the front passenger seat of a vehicle at a local gas station, numerous BCSO officers in multiple law enforcement vehicles swarmed the gas station with blue lights flashing, for the purpose of arresting Plaintiff in a public place.

36. BCSO approached the vehicle with their guns drawn, publicly demanding Plaintiff exit the vehicle.

37. As Plaintiff was attempting to exit the vehicle, BCSO grabbed Plaintiff, forcing him in front of one of the BCSO vehicles, where he was publicly arrested, searched, and made to remain publicly standing in handcuffs while officers searched the vehicle he was in.

38. Plaintiff is informed and believes that on April 16, 2020, after Plaintiff's public arrest, Defendant Duncan met with members of Defendant Stone's Office again, including Defendant Jones, who was complicit in the investigation and decision to have Defendant Duncan obtain arrest warrants charging Dequarious Major ("Major") and Montarious Brown ("Brown"), with murder based on Plaintiff's arrest.

39. Plaintiff's arrest, mugshot, and the criminal offenses he was wrongfully charged with were widely reported in the news and on social media along with the arrests of Brown and Major.

40. Plaintiff's mugshot was printed and distributed in multiple crime publications as a result of his arrest.

41. BCSO also published Plaintiff's arrest, mugshot, and the criminal offenses they wrongfully charged him with on their social media and community blog accounts along with the arrests of Brown and Major.

42. In a report dated April 21, 2020, and submitted to Defendants Stone and Jones, Defendant Duncan admits "[i]t is known from the video and evidence at the scene, the rifle was shot from

the rear passenger quarter panel of the Tahoe. Investigators have spent countless hours tracking down independent witnesses and conducting interviews. However, no one could positively identify [Plaintiff] as the shooter."

43. Plaintiff is informed and believes that, prior to seeking any warrants against Plaintiff, Defendants knew that Holmes identification of Plaintiff as one of the shooters was false based on surveillance video showing that no one shot from the driver side of the white SUV, Plaintiff never being seen in surveillance videos on the driver side of the white SUV (or anywhere else in the videos), no evidence of shell casings in the area of the driver's side of where the white SUV was seen, and the driver of the white SUV never exiting the vehicle.

44. Plaintiff is informed and believes that Defendant Duncan, upon advice and counsel of Defendant Jones and other members of Defendant Stone's office in its investigative and administrative capacity, knowingly and intentionally presented Holmes false statement and identification of Plaintiff as evidence to the court in order to establish probable cause and obtain warrants.

45. After his arrest Plaintiff requested a preliminary probable cause hearing on his criminal charges.

46. Upon information and belief, Defendants Stone and Jones, through their investigative and administrative capacity, had Plaintiff directly indicted on all charges before a probable cause hearing could be held, using the knowingly false and misleading evidence gathered prior to Plaintiff's arrest as the basis for the indictments.

47. On June 14, 2021, Defendant Jones notified Plaintiff, Brown, and Major they were being tried jointly and their cases were being called for trial the week of August 16, 2021.

48. On August 4, 2021, counsel for Brown and Major requested their trials be continued because of a recent COVID-19 exposure in their office. Plaintiff's counsel informed Defendant Jones and the chief administrative judge for the 14th Judicial Circuit that Plaintiff was not requesting a continuance and wanted to go forward with his trial on August 16, 2021.

49. Plaintiff is informed and believes his trial was delayed at the request of Defendant Jones, in her administrative capacity, because she intended to use the false allegations against Plaintiff as leverage to convict Brown and Major.

50. Plaintiff is informed and believes that on multiple occasions between August 4, 2021, and September 17, 2021, Defendant Jones, repeatedly informed the court in her administrative capacity, that it was necessary for the State that the cases against Plaintiff, Brown and Major be tried together in order to establish guilt under the legal concept of "hand of one".

51. Plaintiff is informed and believes that Holmes notified Defendant Stone's office that his statements to BCSO immediately after the shooting were false and coerced from him while he was heavily medicated.

52. Plaintiff is informed and believes that Holmes also informed Defendant Stone's office that he did not see Plaintiff at the Circle K on the night of the shooting and that he never saw Plaintiff with a gun or shooting at him.

53. Plaintiff is informed and believes that Holmes informing Defendant Stone's office his statement to BCSO was false and that he never saw Plaintiff at the Circle K on the night of the shooting was further evidence proving that Plaintiff was innocent of the charges and Defendants Stone and Jones had a duty to disclose such information to Plaintiff and/or his attorney.

54. Plaintiff is informed and believes that on or about August 17, 2021, Defendant Duncan was by Defendant Jones to obtain another search warrant, this one signed by a circuit court judge, in an attempt to gather evidence against Plaintiff.

55. Plaintiff is informed and believes that upon instruction from Defendant Jones, Defendant Duncan submitted a false and misleading warrant affidavit to a circuit court judge in order to establish probable cause to obtain a search warrant for the records of Facebook account ID number 100000895771116 - the same records Defendants had somehow previously obtained on March 31, 2020. The false and misleading statements presented to the court were:

    a. The third shooter is seen on video, exiting a white Tahoe, raising an assault rifle and firing multiple shots at the victim's vehicle.

    b. Victim statements indicate, one victim observed who he knows as Jeffrey Daquann Redd having in his possession the rifle and firing it multiple times.

    c. On 6/4/19, Jeffrey Daquann Redd's White Chevrolet Tahoe, bearing SC registration of PML528 was located at 19 Saxonville Road, Saint Helena Island, SC 29920. This address is Jeffrey Redd's home address. The vehicle was discovered to contain multiple fresh bullet holes.

    d. During subsequent interviews, a witness/victim stated to investigators that they had previously seen social media post from Jeffrey Redd in which he was in possession of a AR-15 style rifle.

    e. Jeffrey Redd was found to have a Facebook Account with the Username "Jeff Slugz" [ID number 100000895771116], this was verified on 04/09/20 at 2:00 pm EST.

56. On September 17, 2021, Plaintiff renewed his motion to sever his trial from Brown and Major.

57. Defendant Jones, objected to the trials being severed, stating on the record their need to try all three cases together to be able to get convictions.

58. Over the objection of Defendant Jones, the trial judge assigned to the criminal trials ordered that all three cases be tried separate and apart from each other.

59. On October 21, 2021, Defendant Jones informed the trial court that they could not call Plaintiff's criminal charges for trial until February 14, 2022, and requested bond remain denied until they called the case for trial.

60. On January 12, 2022, during a pre-trial hearing, Defendant Duncan testified under oath that some of the statements regarding the evidence against Plaintiff that he attested to in his sworn affidavit to the court were false and/or misleading.

61. Plaintiff is informed and believes that Defendant Duncan's admission to making false and/or misleading statements to the court, which Defendants Stone and Jones knew or should have known prior to the hearing, was further evidence proving that Plaintiff was innocent of the charges and Defendants Stone and Jones had a duty to disclose knowledge of such false and misleading information to Plaintiff and/or his attorney.

62. During that same pre-trial hearing, the digital forensic expert from SLED, who was contacted by Defendant Stone's office to analyze the alleged geolocation evidence of Plaintiff's whereabouts on the night of the shooting, testified that the geolocation records obtained by Defendants Byrd and Duncan did not prove Plaintiff was at the Circle K gas station at the time of the shooting and that he could not testify with any degree of certainty as to where Plaintiff was the night the shooting occurred.

63. Plaintiff is informed and believes that Defendants knew or should have known that the geolocation information from Facebook, which was used Defendants in their decision to obtain arrest warrants for Plaintiff, did not incriminate Plaintiff; was further evidence proving that Plaintiff was innocent of the charges; and as such, Defendants had a duty to disclose knowledge of this information to Plaintiff and/or his attorney.

64. On February 14, 2022, the criminal case against Plaintiff was called for trial.

65. On February 16, 2022, Defendants Byrd and Duncan both admitted to the jury under oath that they gave false and/or misleading statements to the courts in order to obtain warrants in their case against Plaintiff.

66. During the trial Defendants could not present a single witness to testify to seeing Plaintiff at the Circle K gas station the night of the shooting.

67. On February 17, 2022, a Beaufort County jury found Plaintiff not guilty of all charges.

68. Plaintiff is informed and believes that after he was found not guilty at trial, Defendants Stone and Jones dismissed the cases against Brown and Major.

69. Plaintiff is informed and believes that Defendants violated his Constitutional Right to Due Process by falsely arresting him without probable cause.

70. Plaintiff is informed and believes that Defendants Stone and Jones violated his Constitutional Right to Due Process by indicting him on criminal charges before a preliminary hearing could be held.

71. Plaintiff is informed and believes that Defendants were aware that there was not sufficient evidence against Plaintiff to warrant his arrest and criminal prosecution and that the criminal charges were pursued as leverage against Brown and Major and/or to delay negative publicity from unsubstantiated criminal charges being dismissed against a man they had publicly branded as a murderer.

72. Plaintiff is informed and believes that Defendants Stone and Jones abused their investigatory and prosecutorial powers by advising Defendant Duncan to obtain warrants and prosecuting Plaintiff on charges they knew, based on their own investigation, were not supported by any credible witness testimony or evidence, thus violating Plaintiff's constitutional rights under the

First, Fourth, Sixth, and Fourteenth Amendments, as well as his rights under the South Carolina Tort Claims Act.

73. Plaintiff is informed and believes that Defendant Stone has developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to individual citizen's constitutional rights, including requesting members of law enforcement meet with his office before obtaining an arrest warrant so that his office can be involved in an investigative capacity prior to any arrest, thereby allowing him to "shortcut the system" by taking a suspect's charges straight to a grand jury and denying them their right to a preliminary hearing.

74. Plaintiff is informed and believes that as a result of Defendants having him arrested and prosecuted, Plaintiff was held in custody at the Beaufort County Detention Center without bond for approximately 672 days before being found not guilty of all charges.

75. While incarcerated Plaintiff suffered from a variety of medical conditions, including but not limited to contracting COVID-19.

76. While incarcerated Plaintiff was unable to receive medical treatment through the VA for injuries and illnesses he was diagnosed with prior to his arrest.

77. While incarcerated Plaintiff was unable to see or spend time with his family, including but not limited to his two young daughters.

78. While incarcerated Plaintiff was unable to work or earn an income.

79. While incarcerated Plaintiff suffered from mental anguish and emotional distress.

80. Plaintiff is informed and believes he is entitled to damages for the malicious and grossly negligent acts perpetrated by the Defendants against him.

**FOR A FIRST CAUSE OF ACTION**
(§1983 Fourth Amendment claim against Defendants for falsely arresting Plaintiff without probable cause)

81. Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

82. As a direct and proximate cause of this unreasonable seizure and illegal detention, Plaintiff suffered damages as hereinafter set out.

## FOR A SECOND CAUSE OF ACTION
(§1983 Fourth and Fifth Amendment claim against Defendants for malicious prosecution)

83. Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

84. Defendants instituted and continued criminal proceedings against Plaintiff.

85. The criminal proceedings against Plaintiff was terminated in his favor via a jury acquittal.

86. There was no probable cause to initiate and/or continue the criminal proceedings against Plaintiff.

87. Defendants acted maliciously in instituting and pursuing the criminal proceedings against Plaintiff.

88. As a direct and proximate cause of the acts and omissions of Defendants, Plaintiff suffered deprivation of his liberty consistent with the concept of seizure as a consequence of a legal proceeding and other such damages as hereinafter set out.

## FOR A THIRD CAUSE OF ACTION
(§1983 Fourth and Fifth Amendment claim against Defendants Stone and Jones for abuse of process)

89. Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

90. Defendants Stone and Jones instituted criminal proceedings against Plaintiff despite lacking probable cause and did so for the ulterior purpose of denying Plaintiff his right to a preliminary probable cause hearing.

91. As a direct and proximate cause of Defendant Stone and Jones acts and omissions, the Plaintiff suffered damages as hereinafter set out.

## FOR A FOURTH CAUSE OF ACTION
(§1983 Fourth and Fifth Amendment claim against Defendants for Civil Conspiracy)

92. Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

93. Defendants Byrd, Duncan and Tanner, individually and/or through their agents/employees, combined with Defendants Stone and Jones individually and/or through their agents/employees of the Fourteenth Judicial Circuit for the purpose of injuring Plaintiff, causing special damages to the Plaintiff. Specifically, but not limited to the willful acts as described above in attempting to use the threat of criminal prosecution to secure convictions against Brown and Major, which caused Plaintiff to suffer deprivation of his liberty consistent with the concept of seizure as a consequence of legal proceedings and such other damages as hereinafter set out.

## FOR A FIFTH CAUSE OF ACTION
(§1983 Fourth and Fifth Amendment claim against Defendants for Defamation Per Se)

94. Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

95. The acts and conduct by Defendants as described above constitute false statements made about Plaintiff, accusing Plaintiff of violent, most serious crimes. As such, the statements are defamatory on their face.

96. The false and defamatory statements were published by Defendants to third parties.

97. There was fault on the part of Defendants in publishing these statements as they did so with knowledge of their falsity and/or reckless disregard as to whether or not they were true.

98. As a direct and proximate cause of this defamation, Plaintiff suffered special harm as hereinafter set out, caused by the publication of the false statements and/or the conduct would be actionable irrespective of any special harm.

## DAMAGES

99. That as a direct and proximate cause of the negligent, reckless, willful and wanton conduct of the Defendants as described above, the Plaintiff has suffered actual and consequential damages, including but not limited to:

    a. Physical Injury;

    b. Emotional Injury;

    c. Psychological Injury;

    d. Mental Anguish and Distress;

    e. Apprehension and Anxiety;

    f. Out-of-Pocket Expenses;

    g. Pain and Suffering;

    h. Attorney Fees and Court Costs in Defending the Criminal Charges; and

100. Special harm due to the defamatory conduct of the Defendants, including but not limited to:

    i. Injury to Reputation and Standing in the Community;

    j. Embarrassment;

    k. Public Humiliation;

    l. Mental Anguish and Suffering;

    m. Wounded Feelings Caused by Injury to Reputation;

101. Special harm due to conspiring with each other in arresting, prolonging and continuing the criminal prosecution against Plaintiff for improper purposes and in conspiring to defame Plaintiff in an attempt to lessen negative publicity from the incident and non-conviction of the false charges against Plaintiff.

102. Such other and further relief as a jury or the Court may deem appropriate.

WHEREFORE having fully set forth the grounds of his complaint Plaintiff asks this court to award compensatory and punitive damages in an appropriate amount and such other and further relief as this court deems just and proper.

CORNWELL LAW FIRM, LLC

*/s Ashley B. Cornwell*
ASHLEY B. CORNWELL
Fed. Bar #10257 SC Bar # 76577
Attorney for Plaintiff
1470 Ben Sawyer Blvd., Suite 14
Mount Pleasant, SC 29464
(843) 595-6003
acornwell@cornwellfirm.com

April 17, 2023
Mount Pleasant, SC